## United Equipment Company v. The D. T. Bohon Company.

(Decided March 4, 1924.)

### Appeal from Mercer Circuit Court.

1. Contracts—Both Parties Bound by Specifications Attached to Contract and Referred to therein Though Not Read.—Both parties to a contract were bound by plans and specifications attached

to the contract when signed and referred to in the contract as part thereof, in so far as such specifications are not inconsistent with the terms of the contract itself, and neither of the parties will be heard to say that it is not bound by the specifications because it failed to read them.

2. Contracts—Insertion of Clause by Fraud or Mistake Held for Jury.—Where delay in equipping plaintiff's building with system of automatic sprinklers for the purpose of lowering insurance rate was occasioned by plaintiff's refusal to supply necessary heat, if provision of the specifications requiring it to do so was inserted through fraud or mistake, it was entitled to recover excess in insurance it was required to pay because of delay; but, if not so inserted, defendant was entitled to recover on counterclaim damages directly caused by refusal of plaintiff to supply heat, and hence the question of fraud or mistake should have been submitted to the jury.

3. Evidence—Written Contract could Not be Varied by Showing Prior Representation.—When a contract for equipment of building with system of automatic sprinklers was reduced to writing and signed by the parties, it was the whole contract between them, and court erred in submitting question whether certain representations were made to the plaintiff before or at the time the contract was signed; such representations being contradictory of the terms of the contract.

4. Contracts—Delay Not Damage to "Property" within Contract to Equip with Automatic Sprinkling System.—A clause in a contract for equipment of plant with automatic sprinkling system that should damage be caused to property a claim therefor must be made in writing did not include claim for consequential damage from delay in carrying out the agreement, such as necessity for continuance of payment of large insurance premiums, though "property" in its broader sense will include claim for damages for breach of contract.

5. Contracts—Law Implies Performance Within Reasonable Time.— Where contract for equipment of plant with automatic sprinkling system fixed no time for completion, the law implied an agreement to complete the same within a reasonable time.

ALLAN D. COLE, H. W. COLE and GREEN, WEBB & COWAN for appellant.

C. E. RANKIN for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

On the first of July, 1918, the United Equipment Company, a Tennessee corporation, and the D. T. Bohon Company, a manufacturing corporation of Harrodsburg, Ky., entered into a written contract wherein the equip-

ment company undertook to equip the buildings in the Bohon manufacturing plant with a wet and dry pipe system of automatic sprinklers, according to certain specifications attached thereto as recited, for a specified sum of money, and fixing the times of payment thereof. The equipment when completed was to be made subject to the approval and acceptance of the Kentucky Actuarial Bureau. In the body of the contract it was said:

"It is further understood and agreed that the specifications shall be treated as part of this contract as fully as if written herein."

There was no time fixed in the contract for the completion of the installation of the sprinkler system, but it appears to be conceded that the purpose of the Bohon Company in having same installed was to reduce its rate of insurance, and the evidence shows it had that effect.

The specifications show that a system of wet pipes was to be installed in the blacksmith shop of the Bohon plant, and that the Bohon company was

"to provide sufficient heat throughout all portions of the plant to be equipped with a wet pipe system, to prevent any freezing of the water in the pipes."

It appears the difference between a wet and a dry pipe system is that the wet pipes are filled with water at all times, and of course subject to freeze, while the dry pipes are filled only with air until a fire occurs when automatically the air is forced out and the water rushes in. The contract itself had no reference to the furnishing of heat by the Bohon Company in any part of the plant.

The Bohon Company filed this action on the written contract for damages against the equipment company, because of its failure to install the sprinkler equipment within a reasonable time, alleging in substance that because of such failure it had been required for several months to pay excessive insurance rates it would not have had to pay if the sprinkler equipment had been installed by defendant in a reasonable time. It filed with its original petition a copy of the contract, but did not file a copy of the specifications.

The court, however, on motion required the plaintiff to file a copy of the specifications because the same were referred to in the contract as a part of it, and then plaintiff filed an amended petition alleging that while the contract referred to certain specifications as being attached

thereto, none was in fact attached at the time it was signed, and that none was in existence at that time, or ever agreed to by the plaintiff. But it admits that from two to five weeks after the execution of the original contract defendant did mail to plaintiff a typewritten paper termed "specifications," and the same was filed with the amendment.

The answer and counterclaim of defendant relies upon the provision as to heat in the specifications as a part of the contract, and in substance alleges that plaintiff refused to furnish the heat required by the specifications in the blacksmith shop, and for that reason the delay in finishing the installation of the plant was caused by the plaintiff, while the plaintiff alleges that defendant through fraud or mistake inserted in the specifications the provision that the plaintiff should provide sufficient heat throughout all portions of the plant equipped with the wet pipe system to prevent freezing.

The defendant in its answer relied upon three items of damages for which it sought judgment against the plaintiff, which it says it incurred because of the plaintiff's refusal to furnish the heat in the blacksmith shop, and thereby delayed the plaintiff and increased the cost of the installation of the plant.

As we understand the evidence, the Actuarial Bureau declined to approve the wet pipe system in the blacksmith shop, unless sufficient heat was furnished therein to justify it, and then the question arose as to whether the Bohon Company should furnish such heat or the equipment company should install in the blasksmith shop a dry pipe system instead of the wet pipe system it had already practically installed therein. The Bohon Company declined to undertake to furnish such heat because it said it was impossible to do so on account of the open nature of the blacksmith shop, and because it had never agreed to do so. The parties failing to agree the subcontractor to whom the equipment company had sublet the contract, stopped the work for several months, but finally took out the wet system from the blacksmith shop and installed the dry system. This appears to be the whole controversy.

Manifestly, if the plans and specifications were attached to the contract when signed, both parties will be charged with a knowledge of their provisions, and will be bound by any provision in them not inconsistent with the terms of the contract itself, nor will the plaintiff be heard

to say that it is not bound by the specifications because it failed to read them.

The only questions of fact which should have been submitted to the jury are, whether the specifications were attached to the contract at the time it was entered into, and if so, whether the provision as to heat in the blacksmith shop was inserted therein by the fraud of the plaintiff or the mutual mistake of the parties. If the specifications were so attached and there was inserted therein by the fraud of the plaintiff the provision for heat in the blacksmith shop, or the same was inserted by the mutual mistake of the parties, then the plaintiff was entitled to recover the excess in insurance it was required to pay because of the delay.

On the other hand, if the specifications were not attached to the contract when same was signed, then they were no part of it; or, if they were so attached and the provision for heat was not inserted by such fraud or mistake, the duty rested upon the plaintiff to furnish the heat, and defendant was entitled to recover on its counterclaim such damages as were directly caused to it by reason of plaintiff's refusal to furnish the heat, and the consequent delay.

The court submitted in its first instruction whether certain representations were made to plaintiff before or at the time the contract was signed. This was error, for when the contract was reduced to writing and signed by the parties it was the whole contract between them if the specifications were not then attached, and if they were so attached they were part of the contract unless the provision as to heat was inserted by such fraud or mistake.

That instruction should have submitted only the two questions of fact indicated. The previous talks and representations were competent only as bearing upon those issues.

The second instruction on the measure of damages, and the third instruction on the defendant's counterclaim appear to be unobjectionable.

The defendant further relies upon the following provision of the contract in bar of the plaintiff's right to maintain this action, to-wit:

"Should damage be caused to property of second party for which first party is liable, a claim therefor with itemized statement thereof must be made in writing to first party or its executive officers promptly and in any event within five days after the

completion of the work; otherwise first party is released from liability thereof.''

The claim is asserted that no such itemized statement was made within the time specified, and that therefore the plaintiff cannot maintain this action.

The word ''property'' in its broader sense will include a claim for damages for breach of contract; but in construing this contract we have no difficulty in finding that it has no such meaning. Clearly the provision had reference to the property of the Bohon Company consisting of the houses, comprising its manufacturing plant and their contents, and did not contemplate any consequential damage that might accrue to that company by reason of the failure of the equipment company to promptly carry out and execute its agreement. The whole context of the contract plainly indicates this interpretation, for the Bohon plant was in a measure turned over to the equipment company for the purpose of installing the sprinkler plant therein, and what the language used contemplated was any damage that might be inflicted by the equipment company upon the houses comprising the manufacturing plant of the Bohon company or their contents.

Of course, as there was no time fixed in the contract for the completion of the sprinkling plant, the law implies an agreement to complete the same within a reasonable time.

For the reasons indicated the judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.